ROBERTSON, Justice:
Mrs. Arthur Gould brought suit in the Circuit Court of Montgomery County against Mid-South Packers, Inc., for damages sustained by her when she broke one tooth and chipped another while eating a Southern Belle all meat skinless frankfurter made by the defendant. The jury returned a verdict for $10,000.00, and defendant has appealed from the judgment entered thereon.
On Saturday, January 23, 1971, Arthur Gould, husband of appellee, purchased a package of Southern Belle Frankfurters from the Piggly Wiggly grocery store in Winona. Mrs. Gould unloaded the grocery bag at her home and put these frankfurters in their original cellophane package in the refrigerator where they remained until Sunday night, January 24th. She opened this package of weiners about 7:00 p. m., took one out and put it in a piece of bread making a sandwich. She sat down to watch T.V. and bit into this hot dog sandwich. She testified that she bit into something hard that broke one tooth in half and chipped another. There were the lower left lateral incisor and the lower left canine tooth.
On Monday morning, January 25th, she went to her dentist, Dr. Anderson. He examined the two damaged teeth and prescribed Darvon 65, a pain-killer, and also a mouthwash and warm saline solution. About three days before the trial began on *786 April 22, 1971, Dr. Anderson found it necessary to remove both damaged teeth, and also a tooth next to these for aesthetic purposes, and still another, the first lower left premolar, because of its doubtful condition. Dr. Anderson constructed a partial removable bridge to replace the four teeth pulled.
The complete dental bill was $500.00, and these were the only actual damages suffered.
The substance that was embedded in the middle of the frankfurter which Mrs. Gould testified she bit in two was a piece of flexible rubber about 2 inches long and about twice the size of a pencil lead. This piece of rubber was introduced as an exhibit to her testimony and was examined by the jury and the trial judge and now has been examined by this Court. In her declaration Mrs. Gould charged that it was “a large wire imbedded in the approximate middle of said frankfurter” that caused her injuries.
The appellant has assigned 9 errors that it contends were committed by the trial court on the trial. We will discuss only two of these, being of the opinion that the other seven are without merit.
The appellant contends that:
“The Trial Court erred in permitting the case to be tried and submitted to the jury on the theory of strict liability in tort since such theory is not applicable to the case under the law of Mississippi.”
We are inclined to agree with appellee that the original strict products liability in tort case in Mississippi was Jackson Coca Cola Bottling Company v. Chapman, 106 Miss. 864, 64 So. 791 (1914) wherein this Court said:
“We find the law pertinent to this case clearly stated by Judge Chandler in the case of Watson v. Augusta Brewing Company, 124 Ga. 121, 52 S.E. 152, 1 L.R.A. (N.S.) 1178, 110 Am.St.Rep. 157, as follows: ‘When a manufacturer makes, bottles, and sells to the retail trade, to be again sold to the general public, a beverage represented to be refreshing and harmless, he is under a legal duty to see to it that in the process of bottling no foreign substance shall be mixed with the beverage, which, if taken into the human stomach, will be injurious.’ In that case it is further held that this duty the bottler owes to the general public for whom his drinks are intended as well as to the retailer to whom he sells.” (Emphasis added). 106 Miss. at 869, 64 So. at 791.
While it is true that recovery was allowed in Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305 (1927), on the theory of implied warranty, this Court went on to say:
“[T]he fact that there was glass in the bottle when it was sealed and put upon the market for the public created liability for the injury to the one who drank it, regardless of whether the manufacturer was guilty of negligence or not. This rule is established in this state by the cases of Coca-Cola Bottling Co. v. Chapman, 106 Miss. 864, 64 So. 791; Rainwater v. Coca-Cola Co., 131 Miss. 315, 95 So. 444; and Grapico Bottling Works v. Ennis, 140 Miss. 502, 106 So. 97, 44 A.L.R. 124.” (Emphasis added.) 145 Miss. at 882, 111 So. at 306.
We said in State Stove Manufacturing Company et al., v. Hodges et ux., 189 So.2d 113 (1966):
“In the absence of privity, the liability is in tort and not in contract, and a concept of warranty from the contract law of sales is irrelevant. The conclusions are particularly pertinent in this jurisdiction, since the doctrine of a strict liability of the manufacturer to the consumer, without negligence, was developed here beginning in 1927 in Coca-Cola Bottling Works v. Lyons and subsequent cases.” (Emphasis added.) 189 So.2d at 119.
It would be an anomalous situation indeed if we were to apply the theory of *787 strict products liability in tort to the manufacturer of a piece of machinery and to refuse to apply that theory to the maker or manufacturer of food products or beverages which are designed and intended to be taken into the human body for building up health and strength. It would be an abrogation of this state’s consistent policy of applying stricter standards to food and drink products.
We are of the opinion that the trial court did not err in submitting the case to the jury on the theory of strict liability in tort.
The other assignment of error which we feel does have merit is:
“The verdict of the jury is so excessive that it evinces bias, prejudice, and passion against Mid-South Packers, Inc., and the verdict and judgment entered should be set aside.”
Mrs. Gould was SS years of age at the time she testified that she bit into a weiner sandwich and broke one tooth and chipped another. Her testimony was that she had had two teeth pulled in 1960, and hadn’t been to the dentist since. Her total actual out-of-pocket expenses were $500.00. She did testify that she suffered some pain and did not sleep well for several nights after injuring her teeth. She will have to put up with a partial removable bridge which replaces four natural teeth for the rest of her life. But these were and are all the damages that she has suffered or will in the future suffer.
We feel that $6,000.00 would have been a rather generous verdict for her injuries. The $10,000.00 verdict was so excessive as to evince bias, passion and prejudice against the appellant. We are, therefore, of the opinion that the judgment should be reversed and a new trial granted unless the appellee agrees to remit $4,000.00 of this judgment, thus reducing the recovery for these injuries to $6,000.00.
The judgment is reversed and a new trial granted unless the appellee shall, within fifteen days after final judgment in this Court, enter a remittitur of $4,000.00. In the event the remittitur is entered, a judgment in favor of the Appellee will be entered here for $6,000.00.
Reversed and remanded unless the specified remittitur is entered within the time set.
GILLESPIE, C. J., and JONES, PATTERSON and INZER, JJ., concur.